# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANWAR EAST, | Civil Action |
| Petitioner, | No. 10-2158 |
| v. | |
| GERALD ROZUM, | |
| Respondent. | |

## **MEMORANDUM**

On May 11, 2010, petitioner Anwar East filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 22, 2010, Magistrate Judge Rice filed a thorough and carefully reasoned Report and Recommendation ("R&R") that recommends denying the petition. *See* Docket No. 13. On December 16, 2010, East filed objections to the R&R. Having reviewed the R&R, East's objections, and the entire record in this action, the court will adopt the recommendations of the R&R and deny the petition.

1

**I.     Background**[1]

In the early morning of October 17, 1997, Leroy Thompson was fatally shot in his car. When police arrived at the crime scene, an eyewitness, Alexander Velez, reported that he had witnessed the shooting from his porch. Velez said that he saw the car stop near his house, and then saw a passenger get out, fire five shots at the driver, and flee. The police recovered five bullet casings from the scene. *See* R&R at 1–2.

A few months later, on February 26, 1998, East was arrested after a police officer saw him discard a gun. The police recovered the gun, and test firing revealed that it was the same gun used in the murder. Velez identified East as the shooter by picking his picture out of two photographic arrays in July 1998 and by identifying him in a lineup three months later. *See id.* at 2.

East was charged with first-degree murder and possession of an instrument of crime. The District Attorney's office gave discovery to defense counsel that included, among other things, the statement of Rasheeda Jones. *See id.* at 3. Jones gave an interview to the police on July 31, 1998, in which she reported hearing that another man, "Marquise," had killed Leroy Thompson. *See* Docket No. 11-11 (investigation interview record) at 3. Jones said in the interview that she would *not* describe the source of the information as "a very truthful person." *Id*. at 5.

---

[1] The factual and procedural history of this case is set out in detail in the R&R, from which this section draws.

East's trial took place from April 11 to 17, 2000. At the outset of the trial, the judge gave the following preliminary jury instruction concerning witness credibility:

> You are the judges of the credibility and weight of all the evidence, including the testimony of witnesses. . . . In judging credibility and weight you should use your understanding of human nature and your common sense. Observe each witness as he or she testifies. Be alert for anything in his or her words, demeanor, or behavior on the witness stand, or for anything in the other evidence in the case which might help you to judge the truthfulness, accuracy, and weight of his or her testimony.

Trial Vol. 2 at 10–11.[2]

Velez, who at the time of the trial was in jail awaiting sentencing on a drug charge, testified that East was the shooter. Defense counsel cross-examined Velez at length regarding his criminal record, his most recent conviction for selling drugs, his pending sentencing, and his history of drug use. East's counsel also returned to the topics of Velez's credibility, prior convictions, and criminal sentencing during closing argument. *See* R&R at 2.

In addition, the officer who arrested East for possessing the firearm testified that East had pointed the gun in his direction before discarding it. Pursuant to an agreement between counsel, the officer did not mention that he was responding to a report of an armed robbery at the time. Defense counsel did not immediately object to the officer's

---

[2] The transcript of East's trial consists of five volumes: Volume 1 from April 11, 2000; Volume 2 from April 12, 2000; Volume 3 from April 13, 2000; Volume 4 from April 14, 2000; and Volume 5 from April 17, 2000. For convenience, this memorandum will cite to the transcripts by volume number only.

testimony that East pointed a gun at him, but moved for a mistrial the next day, asserting that the testimony violated the agreement. The trial court denied the motion, but offered to give a curative instruction. Such an instruction was later given, with East's approval. *See id.* at 2–3.

East was found guilty on both counts on April 17, 2000, and was sentenced to life imprisonment for the murder charge and 30 to 60 months of imprisonment for possessing an instrument of a crime, to be served concurrently. *See id.* at 1. East did not file a timely direct appeal, but his direct appeal rights were later reinstated after he filed a timely petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq. *See id.* at 5.

On direct appeal to the Pennsylvania Superior Court, East argued that: (1) the evidence was insufficient to show a specific intent to kill; (2) a mistrial should have been granted because the police officer's testimony violated counsels' agreement; (3) the trial court erred by not giving a bias instruction concerning Velez's criminal charges; (4) the trial court erred by failing to give a cautionary instruction regarding Velez's identification testimony; (5) the trial court erred by giving insufficient jury instructions concerning general witness credibility; and (6) trial counsel was ineffective for failing to request jury instructions concerning Velez's possible bias, general jury instructions concerning witness credibility, and an instruction warning the jury to view Velez's testimony with caution. *See* Docket No. 11-3 (direct appeal opinion) at 4–5. The Superior Court

affirmed the trial court's judgment on April 1, 2004. The Pennsylvania Supreme Court denied East's petition for allowance of appeal on August 5, 2004. *See* R&R at 6.

East filed a second *pro se* PCRA petition on January 5, 2005. He was appointed counsel, and his counsel filed an amended petition on May 19, 2006. The amended petition argued that trial counsel was ineffective for (1) failing to request a bias instruction and (2) failing to request an instruction warning the jury to view Velez's testimony with caution. The PCRA court dismissed East's petition on November 19, 2007. The Superior Court affirmed the dismissal on July 16, 2009, and the Pennsylvania Supreme Court denied appeal on December 29, 2009. *See id.*

East filed a timely *pro se* federal habeas corpus petition on May 11, 2010. The petition alleges that: (1) the trial court abused its discretion by failing to give jury instructions concerning Velez's credibility and possible bias; (2) the prosecutor violated counsels' agreement by questioning the police officer regarding whether East pointed a gun at him; (3) the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose potentially exculpatory evidence; (4) trial defense counsel was ineffective for failing to request jury instructions about Velez's possible bias; (5) trial counsel was ineffective for failing to present alibi evidence; (6) the trial court violated East's Fifth, Eighth, and Fourteenth Amendment rights; and (7) East is factually innocent of the crimes of which he was convicted. *See id.* at 6–7.

On November 22, 2010, Magistrate Judge Rice issued the R&R recommending

5

that East's claims be dismissed. The R&R found that East's only properly preserved claim—that his trial counsel was constitutionally ineffective for failing to request a jury instruction concerning Velez's possible bias—was meritless. The other six claims were found to be procedurally defaulted. *See id.* at 7, 19. The R&R also recommended that a certification of appealability should not be granted. *See id.* at 22 n.15. On December 16, 2010, petitioner filed objections to the R&R. *See* Docket No. 17.

## II. Discussion

In reviewing a report and recommendation prepared by a magistrate judge, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72; *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007).

East only raises objections to the R&R's conclusions regarding three of the seven claims presented in his petition: (1) that his ineffective assistance of counsel claim is meritless; (2) that his claim that trial counsel was ineffective for failing to present alibi evidence was procedurally defaulted; and (3) that his factual innocence claim was procedurally defaulted. *See* Docket No. 17 at 1–2. This memorandum will focus upon the three conclusions to which East has objected. With respect to the other four claims presented in the petition, the court has engaged in a careful and independent review of the

entire record and the applicable law, and concludes that they are procedurally defaulted.³

   A.   Procedurally Defaulted Claims

Federal habeas relief for a state prisoner is generally not available unless she has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). To exhaust her state court remedies, the prisoner must "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

---

³ Two of these claims were deemed waived by the Pennsylvania Superior Court: (1) trial court error for failing to give jury instructions concerning Velez's credibility and possible bias; and (2) prosecutorial misconduct for failing to restrict the police officer's testimony to the agreed upon scope. *See* Docket No. 11-3 (direct appeal opinion) at 16, 17 n.5. With respect to the first, the trial record confirms that defense counsel did not object to the jury instructions at the time they were given to the jury, *see* Trial Volume 5 at 54–67, and did not ask for a sidebar conference when given the opportunity to do so, *see* Trial Volume 5 at 67. With respect to the second, the Superior Court found that "[t]he record makes clear that defense counsel's motion for a mistrial, presented a day after the challenged testimony, was untimely" and therefore concluded that "the issue is waived." Docket No. 11-3 at 16. The trial transcripts confirm the Superior Court's reading of the record. *See* Trial Volume 2 at 88; Trial Volume 3 at 3–5. Because of these failures, both of these claims were waived. *See Commonwealth v. Montalvo*, 641 A.2d 1176, 1188 (Pa. Super. Ct. 1994) (holding that "a defendant must move for a mistrial at the time a prejudicial event is disclosed").
   The other two claims alleged (1) prosecutorial misconduct for withholding potentially exculpatory information and (2) violations of East's Fifth, Eighth, and Fourteenth Amendment rights. Although these claims were presented in some form in East's original *pro se* PCRA petition, *see* Docket No. 11-5 at 4, they were not present in the amended petition submitted by his attorney, *see* Docket No. 11-6 at 7. Under state law, the amended PCRA petition replaces the original petition. *See Commonwealth. v. Pursell*, 724 A.2d 293, 301–02 (Pa. 1999). As a result, these claims were not fairly presented to the state court. Moreover, East is now well beyond the one-year limitations period for filing an additional PCRA petition. *See* 42 Pa. Cons. Stat.§ 9545(b); *see also* R&R at 11–12.

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must also "fairly present[]" her claim in state court; that is, she must set forth its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (internal quotation omitted).

In addition to barring review of claims that have not been properly exhausted, federal law also prohibits review of claims that are procedurally defaulted. As the Third Circuit explained in *Nara*, "[t]he procedural default doctrine prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." 488 F.3d at 199 (citations omitted); *see also Magwood v. Patterson*, 130 S. Ct. 2788, 2801 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention—whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review." (citations omitted)). Such independent and adequate grounds include violations of state law procedure when the state procedural rule was both (1) "announced prior to its application in the petitioner's case" and (2) "'firmly established and regularly followed.'" *Fahy v. Horn,* 516 F.3d 169, 187 (3d Cir. 2008) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). Although the issue of procedural default is generally "best addressed by state courts in the first instance," a district court may nonetheless determine that a claim is procedurally barred where state law would "unambiguously" deem it to be defaulted. *Carter v. Vaughn*, 62 F.3d 591,

595 (3d Cir. 1995).

Two of the three claims upon which East bases his objections to the R&R were never presented in state court and are therefore procedurally defaulted: (1) ineffective assistance of counsel for failing to present alibi evidence; and (2) actual innocence. Under Pennsylvania law, "an issue is waived [for the purposes of PCRA review] if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa. Cons. Stat. § 9544. Subject to a few inapplicable exceptions, PCRA petitions must be filed "within one year of the date the judgment becomes final." 42 Pa. Cons. Stat.§ 9545(b). East's conviction became final on November 3, 2004, 90 days after the Pennsylvania Supreme Court denied review of his direct appeal. *See Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999). Thus, these two habeas claims, coming five and a half years after his conviction became final, are unambiguously defaulted under state law.

If a petitioner's claims are unambiguously defaulted, as these claims are, the court must determine whether "cause and prejudice existed for [the] procedural default or whether failure to consider [the] claims would 'result in a fundamental miscarriage of justice.'" *Carter*, 62 F.3d at 595 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To establish cause for the default, a habeas petitioner must ordinarily demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). East argues that his default should be excused because his PCRA counsel failed to raise his alibi and actual innocence claims despite their inclusion in East's *pro se* PCRA petition. This argument is precluded by the Supreme Court's holding in *Murray*. *See* 477 U.S. at 486 ("[T]he mere fact that counsel . . . failed to raise [a] claim despite

9

recognizing it . . . does not constitute cause for a procedural default"); *see also Lutz v. Brennan*, 67 F. App'x 151, 157 n.3 (3d Cir. 2003).

To establish a fundamental miscarriage of justice, "a habeas petitioner must 'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). East has presented no evidence to support his conclusory assertions that he is actually innocent and that his counsel failed to present alibi evidence. Thus, East has failed to establish cause for his procedural default or a fundamental miscarriage of justice, and this court may not review his claims.

### B. The Preserved Claim for Ineffectiveness of Counsel

East's remaining claim is that his trial counsel was ineffective for failing to request a jury instruction regarding witness bias, where the only eyewitness to the crime was awaiting sentencing on a drug charge. *See* R&R at 2. East exhausted this claim by raising it on direct appeal, *see* Docket No. 11-3 at 17, and in his second PCRA petition, *see* Docket No. 11-6 at 7. Accordingly, this claim was properly preserved for federal habeas review. However, as the R&R recognized, this claim is meritless. *See* R&R at 20–21.

Federal courts may not grant a writ of habeas corpus unless the state court's ruling either (1) "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To demonstrate that a state court decision is contrary to clearly established federal law, as determined by the Supreme Court, a petitioner must show that the decision "ignores or misapprehends clear precedent." *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir. 2008). A petitioner seeking to demonstrate that a state court decision involved an unreasonable application of federal law cannot merely show that the decision was erroneous. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), sets forth a two-part test for ineffective assistance of counsel claims. First, the defendant must show that "counsel's performance was deficient," which involves demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the habeas context, if the state court has addressed counsel's effectiveness, "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

East's ineffectiveness claim was addressed by the Pennsylvania courts: the PCRA court held that East's ineffectiveness of counsel claim was "without merit" because defense counsel cross-examined the witness "concerning any favorable treatment he was promised for his testimony" and "[t]he absence of [a requested] instruction did not affect the outcome of the case."[4] Docket No. 11-7 at 3–4. On appeal, the Superior Court affirmed. Employing a test consistent with *Strickland*,[5] it held that East "suffered no prejudice" because he "had the full opportunity to confront Velez regarding his potential bias." Docket No. 11-8 at 6.

This conclusion was neither contrary to, nor an unreasonable application of,

---

[4] As the R&R notes, the Superior Court erroneously stated that no curative instruction was given. *See* R&R at 3 n.2.

[5] The Superior Court stated that "the defendant must show (1) that the underlying claim has arguable merit; (2) that counsel had no reasonable basis for his or her action; and (3) that counsel's action resulted in prejudice towards the defendant." Docket No. 11-8 at 4; *see also Commonwealth v. Sneed*, 899 A.2d 1067, 1075–76 (Pa. 2006) ("It is settled that the test for counsel ineffectiveness is the same under both the Pennsylvania and Federal Constitutions: it is the performance and prejudice test set forth in *Strickland*." (citation and internal quotation marks omitted)).

*Strickland*. The state courts did not apply any rules contradicting governing law. Further, it was not unreasonable for the state courts to find, based upon the totality of the evidence presented at trial, that East suffered no prejudice from his attorney's failure to request a bias instruction. *See Strickland*, 466 U.S. at 695 (emphasizing that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury"); *see also Jackson v. Britton*, 2010 WL 1337730, at *7–8 (E.D. Pa. 2010). As both the Superior Court opinion and the R&R point out, the trial judge told the jury at the beginning of the trial to "use [their] understanding of human nature and [their] common sense" to "judge the truthfulness, accuracy, and weight" of each witness's testimony. Trial Vol. 2 at 10–11. During trial, defense counsel cross-examined Velez about his criminal history, *see* Trial Vol. 3 at 32–35, and made Velez's credibility a focal point of his closing argument, *see* Trial Vol. 5 at 29–37. For example, defense counsel argued in his closing argument that Velez was "a drug dealer with no credibility," *see* Trial Vol. 5 at 36, and stressed "corrections" in Velez's sentence from "eleven and a half to 23" years to "nine months," *see id.* at 30.

Thus, between the preliminary jury instructions, defense counsel's cross-examination of Velez, and defense counsel's closing argument, the jury had significant guidance concerning Velez's purported bias.[6] Moreover, East was

---

[6] Furthermore, as the R&R points out, *see* R&R at 20 n.14, there is no evidence that Velez was facing criminal charges when he first identified East as the shooter, and Velez consistently identified East in subsequent proceedings. *See* Document No. 11-8 at

consistently identified as the shooter by Velez, and he was in possession of the murder weapon a few months after the killing. Accordingly, it was not unreasonable for the Superior Court to conclude that the omission of an instruction on witness credibility did not prejudice the outcome of the trial, and East's ineffectiveness claim must be denied.

C. Evidentiary Hearing

In his objections to the R&R, East requests an evidentiary hearing before this court to develop his claims, including his procedurally defaulted claims. *See* Docket No. 17 at 1–2. Under 28 U.S.C. § 2254(e)(2), district courts may hold evidentiary hearings on habeas review only in a limited set of circumstances. *See Cambell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).[7] East has not made any showing that his claims rely upon either

---

7 ("While East says that Velez admitted that he failed to identify East in a photo array, a more careful reading of the trial transcript shows that Velez was simply confused and did not know the meaning of the term 'array.'").

[7] 28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on—
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

14

a new rule of constitutional law or upon a factual predicate that could not have previously been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2254(e)(2)(A). Moreover, as discussed above, the state court record unambiguously establishes that six of East's claims were procedurally defaulted. His remaining claim, also discussed above, fails as a matter of law. Accordingly, East's request will be denied.

### D. Certificate of Appealability

The court adopts the R&R's recommendation that a certificate of appealability should not be issued because petitioner has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that issuance of a certificate of appealability is only appropriate where reasonable jurists would find that the "court's assessment of the constitutional claims debatable or wrong").

## III. Conclusion

For the foregoing reasons, the R&R will be adopted, East's petition for the issuance of a writ of habeas corpus will be denied, East's request for an evidentiary hearing will be denied, and a certificate of appealability will not be issued. An appropriate order accompanies this memorandum.